# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7081 | **DATE** | 8/25/2000 |
| **CASE TITLE** | Lewis, et al. vs. Washington, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Class certification is granted as unopposed. The motion to dismiss is granted in part and denied in part. Enter memorandum opinion. Discovery cut-off is set for 6/1/01, dispositive motions are due 7/15/01, final pretrial order is due 10/30/01, responses to motions in limine are due 11/14/01, final pretrial conference is set for 12/14/01 at 4:00 p.m., and trial is set for 3/11/02, at 9:30 a.m.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | 15 number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | AUG 28 2000 date docketed | 56 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 00 AUG 28 PM 2:32 | 8/25/2000 date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL LEWIS, RICHARD E. )
BOURBEAU, BRET SHERWOOD, )
DARNELL TIPTON, TYRONE HENSON, )
WALTER MORRIS, TIMOTHY ROSS, )
HEMINO ORTIZ, CHESTER HIETZMAN, )
DAVID HUMMON, ROY CORD, and )
SCOTT JENNINGS )
)
Plaintiffs, )
)
v. ) No. 99 C 7081
)
ODIE WASHINGTON, DONALD SNYDER, )
DWAYNE A. CLARK, JAMES H. PAGE, )
TYREE CURRIE, and DONALD GAETZ, )
)
Defendants. )

DOCKETED
AUG 2 8 2000

## MEMORANDUM OPINION AND ORDER

The plaintiffs are inmates incarcerated at Stateville Correctional Center in Joliet, Illinois, who were placed in "Category IV," or "unapproved protective custody" after they formally grieved the denial of "approved" protective custody status. While in Category IV, they were denied access to communal religious services, educational opportunities, drug and alcohol rehabilitation programs, the gym, and hot food; they were kept out of the large exercise yard and were relegated to a 50 square foot yard without toilets or drinking water. The plaintiffs allege that

they were denied access to the law library or to trained legal assistance. This mistreatment, they say, has been going on since 1995. They filed a pro se case[1] suing various prison officials in their official capacities under 42 U.S.C. § 1983, alleging violations of their constitutional rights. They also move for certification of the class of similarly situated inmates, about 160 individuals who have been placed in Category IV since the beginning of 1995. The defendants move to dismiss. I grant the class certification as unopposed, and deny the motion to dismiss in part and grant it in part.

I.

The defendants do not oppose the motion to certify, choosing instead to file a motion to dismiss. Since the state knows that I decide a motion to certify a class prior to ruling on the merits if possible, see *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir. 1997), the defendants must have decided to waive response to the class certification. However, the plaintiffs have indeed satisfied the requirements of Fed. R. Civ. P. 23. See *Shvartsman v. Apfel*, 138 F.3d 1196, 1201 (7th Cir. 1998). As required by Rule 23(a): (1) the class, here at least 160 members, is so numerous

---

[1] They are now represented.

that joinder of all members is impracticable; (2) there are questions of law or fact common to the class, in particular, deprivations of various constitutional rights associated with Category IV status; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class, since they now are ably represented and have no apparent conflicts of interest with absent class members.

I also determine that this is a Rule 23(b)(2) class action "for purposes of injunctive relief." *Isby v. Bayh*, 75 F.3d 1191, 1194 (7th Cir. 1996). Rule 23(b)(2) requires that (1) injunctive or declaratory relief must be the predominant form of relief sought, and (2) the defendants must have acted on grounds generally applicable to the class. The plaintiffs request that I declare that their rights have been violated and seek an injunction prohibiting the practices of which they complain. They also request a punitive damages award of $20,000,[2] but injunctive and declaratory relief is clearly the predominant form of relief sought. The defendants have

---

[2] The Eleventh Amendment bars plaintiffs from suing for a "retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974).

-3-

acted on grounds common to the class by putting them in Category IV and subjecting them to the treatment alleged here. Therefore, the requirements of Rule 23 are met and the class is certified.

II.

Fed. R. Civ. P. 12(b)(6) will be invoked to dismiss a claim only if it is clear that "'no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.'" *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998)(internal citations omitted). In reviewing a motion to dismiss, "all facts alleged in the complaint and any inferences reasonably drawn therefrom must be viewed in the light most favorable to the plaintiff." *In re Healthcare Compare Corp. Securities Litig.*, 75 F.3d 276, 279 (7th Cir. 1996). Although the plaintiffs are now represented, they proceeded pro se for a period, and "pro se complaints . . . are to be liberally construed." *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1207 (7th Cir. 1980). The essence of liberal construction is "to give a pro se plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable." *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998).

A.

The complaint names as defendants Odie Washington, a former director of the Illinois Department of Corrections ("IDOC"), Donald Snyder, the present director of IDOC, several past and present wardens of Stateville, and other supervisory personnel. The defendants argue that these individuals cannot be held liable under § 1983 because they were not "personally responsible for a deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). An official "cannot be personally liable under a theory of respondeat superior." *Id*. Mere negligence by supervisors is not actionable under § 1983. *See Jones v. Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

All this is true, but the defendants seem to think that supervisors are immune under this statute unless they themselves impose the constitutional deprivation. That is not the law, as they should know. An official can be held liable "if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Id*. (internal citations omitted). That is, for liability he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id*. If there is some causal connection or affirmative link between the action complained about and the official sued, *Wolf-Lillie v.*

*Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983), there can be § 1983 liability. *See, e.g., Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994)(IDOC Director had enough personal involvement because he "approved an unjustified disciplinary ticket issued by [subordinates].").

The defendants say that the plaintiffs failed to describe any specific acts or omissions of the defendants, but they do not have to. All the Rules require is "'a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Leatherman v. Tarrant County Narcotics and Intelligence Coordination Unit*, 507 U.S. 163, 168 (1993)(internal citation omitted). A plaintiff "need not plead facts; he can plead conclusions if they provide the defendant with at least minimal notice of the claim." *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998). The plaintiffs here have put the defendants on notice. Moreover, given the "well-established requirement that pro se pleadings be held to less stringent standards than those prepared by counsel," *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981), I find that the act or omissions of which the plaintiffs accuse the named defendants are obvious: that they

created Category IV, approved, condoned, or ordered the deprivations to which the plaintiffs were subjected, and turned a blind eye to the alleged constitutional violations involved.

B.

Next, the defendants claim that the plaintiffs have not exhausted all their administrative remedies, and therefore their lawsuit must be dismissed under the Prison Litigation Reform Act, 42 U.S.C. 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any . . . prison . . . until such administrative remedies as are available are exhausted."); see *Perez v. Wisconsin Dep't of Correction*, 182 F.3d 532, 535 (7th Cir. 1999). The plaintiffs say that they have completed the grievance procedure required to remedy the contested placement, and that suffices for exhaustion in reviewing a motion to dismiss.

The defendants offer an affidavit that the plaintiffs have only a set of written grievances to a counselor and grievance officer contesting the placement and not the specific conditions here complained of, but I cannot consider the defendants' affidavit in appraising a motion to dismiss. If the defendants' theory is that the plaintiffs must administratively exhaust each and every

-7-

grievance they have, *e.g.*, refusal to let inmates in Category IV attend religious services, confinement to a small recreation area, *etc.*, which, as the plaintiffs argue, is a natural reading of the defendants' murky argument, this is incorrect. Otherwise the defendants could obstruct legal remedies to unconstitutional actions by subdividing the grievances, arguing, *e.g.*, that the Christians, Muslims, and Jews must each grieve denial of access to their own communal services. Under the facts of this case, and given liberal construction of pro se pleading, I read the plaintiffs' administrative grievances as being directed at the placement in Category IV in part because of the unconstitutional conditions it alleges, and therefore to satisfy the requirement that administrative remedies be exhausted.

The gravamen of the plaintiffs' complaint is that their constitutional rights were violated by placing them in Category IV insofar as it was operated roughly as described. The plaintiffs have done enough if they have exhausted their remedies with regard to their placement in Category IV in part because of the allegedly illegal conditions in effect there. They need not have done so with every separate beef they have with the operation of Category IV.

C.

Next, the defendants argue that the plaintiffs have not satisfied § 1997e(f)'s "physical injury" requirement. The statute says that "[n]o Federal civil action may be brought by a prisoner confined in a . . . prison . . . , for mental or emotional injury suffered while in custody without a prior showing of physical injury." However, first, the plaintiffs have not pled any mental or emotional injury for which they would require a showing of physical injury under this section. The statute is meant to exclude recovery for mere emotional or mental distress. *See Zehner v. Trigg*, 952 F. Supp. 1318, 1322-23 (S.D. Ind. 1997) (No recovery for emotional injury due to asbestos exposure without "proof of resulting disease or other adverse physical effects"). The plaintiffs, however, argue either that they have been subjected unconstitutionally to physical harm, for example, by being denied access to the main exercise yard and confined to a small one without toilets or drinking water, or that they have been deprived of First Amendment religious freedoms or subject to other violations that do not require a showing of mental distress. *See Rowe v. Shake*, 196 F.3d 778, 781-82 (7th Cir. 1999) ("A prisoner is entitled to judicial relief for a violation of his First Amendment rights aside from any physical, mental, or emotional injury he may have sustained."). Mental distress or

emotional anguish is not an element of, or necessary to, any of the plaintiffs' claims, so § 1997e(f) is irrelevant here.

D.

According to the defendants, the plaintiffs' religious freedom claims fail as a matter of law because exclusion from communal religious services served a "legitimate penological objective," *Burton v. Nelson*, No. 95 C 6434, 1998 WL 46900, at * 7 (N.D. Ill. Feb. 3, 1998)(unreported opinion) (*citing O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987)), here the need to maximize the attendance of inmates at communal services. I do not understand how preventing some inmates from attending such services maximizes the number of inmates who attend these services. One would have thought that this would have the opposite effect. Moreover, I cannot rely in a motion to dismiss on the facts regarded as established by another judge of this court in a summary judgment motion concerning the same issue with different plaintiffs and some of the same defendants. If the defendants mean to appeal to some such doctrine as nonmutual defensive collateral estoppel, they will have to argue it and not just hint at it.

The defendants conclude with a grab bag of objections to specific claims. They argue that failure to provide access to

vocational, rehabilitative, and educational opportunities does not constitute cruel and unusual punishment. They refer me to *Madyun v. Thompson*, 657 F.2d 868, 874 (7th Cir. 1981) ("Failure to provide such programs . . . does not violate the Constitution in the absence of grievously debilitating prison conditions."). However, "the essence of an Eighth Amendment violation consists of the totality of the conditions of confinement." *Id.* (*citing Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (The Eighth Amendment is violated when: (1) the deprivation alleged is sufficiently serious, and (2) the prison official's acts results in the denial of the minimal civilized measure of life's necessities.)

While in general there is no constitutional right to vocational or rehabilitative programs, the totality of the deprivations to which Category IV inmates are allegedly subjected could indeed rise to the level of a constitutional violation, if the allegations are taken, as they must be for this motion, in the worst possible light, *i.e.*, drawing every reasonable inference in favor of the plaintiffs. Collectively, the conditions are sufficiently serious and arguably deny a minimum civilized measure of life's necessities. It's close, but this is a motion to dismiss.

Likewise with the defendants' arguments concerning denial of access to the gym, confinement to a small exercise yard with no "amenities" (that is, drinking water or toilets), and cold food. Individually, some of these things might be merely burdensome or irritations, although the exercise yard without "amenities" might well rise on its own to a constitutional violation because of the health risks it poses. Taken together, subjecting inmates to these conditions merely because they grieved a denial to be classified in approved protective custody, may well imposed "atypical or significant hardships in relation to the ordinary incidents of prison life," *Sandin v. Connor*, 515 U.S. 472, 484 (1995) (due process context), in the words of the case the defendants themselves cite. Ordinarily, inmates are not denied access to vocational programs, communal religious services, hot food, and a recreation area with "amenities." Therefore these hardships are atypical, and collectively, they are significant and at the bottom of the minimum civilized measure; on a motion to dismiss, particularly with pro se pleadings, I must give the plaintiffs the benefit of the doubt.

The defendants argue that the conditions challenged here are "the penalty inmates pay for their crimes," *see Rhodes*, 452 U.S. at

347 ("To the extent that [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."). However, the conditions complained of are not part of their punishment. The plaintiffs have been subjected to them only because they grieved being denied placement in approved protective custody, which is not a punishable offense, and indeed, may be protected. *See* 42 U.S.C. 1997d ("No person reporting conditions which may constitute a violation under this subchapter shall be subjected to retaliation . . . ."). Whether or not it is protected, the plaintiffs are entitled to present evidence that the marginal conditions they describe were awful enough to fall below the minimum constitutional requirements.

A final note: the defendants make much hay of the fact that, as they say, placement in Category IV is "voluntary," by which is meant, I gather, that inmates who do not wish to be subjected to the conditions in that category but who have been denied placement in "approved" protective custody can go back into the general population, where they will not be subject to these conditions. The inmates in Category IV sought protective custody because they feared for their safety. Inmates who would endure the alleged conditions for years may be presumed to have genuine and possibly well-grounded fears, fears of a sort that make the choice not

really voluntary.

### III.

Accordingly I GRANT the plaintiffs' motion to certify the class as unopposed, and as justified in any case, and I DENY the defendant's motions to dismiss the plaintiffs' complaint, except for the claims about access to the law library, trained legal advice, and the courts, where I GRANT the dismissal as unopposed.

ENTER ORDER:

_____
Elaine E. Bucklo
United States District Judge

Dated: August 25, 2000